IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-00347-RN

**John Steven Koenig**,

    Plaintiff,

v.

**John W Dowdy, Jr., et al**,

    Defendants.

**Order**

Plaintiff John Steven Koenig alleges that the Defendants John W. Dowdy, Jr.; Culhain McDaniel; Fortress Homes, LLC; and All-American Homes, Inc. took advantage of his generosity and violated his rights when they made derivative copies of a home design he claims to have created. According to Koenig, he allowed Dowdy, McDaniel, and Fortress Homes to use his design, known as the JF1502 Plan, to build a house for someone who lost his home to a tornado. But, Koenig alleges, the Defendants went on to make derivative copies of the Plan without his permission, had copyright management information removed from the Plan, built several additional houses from the derivative plans, and distributed their derivative plans to other builders. Koenig claims that these plans violate various portions of the Copyright Act and North Carolina's statutory prohibition on unfair and deceptive trade practices ("UDTP"). He also alleges that the Defendants conspired to commit these bad acts.

As you would expect, the Defendants disagree. After conducting discovery, they argue that Koenig lacks standing to pursue his copyright-based claims since he is not the author of the JF1502 Plan, and that there is insufficient evidence to go to trial on any of the other claims.

After reviewing the record and the parties' arguments, the court has determined that although there is insufficient evidence to proceed to trial on Koenig's civil conspiracy and UDTP claims, the presence of genuine issues of material fact necessitates a trial on the copyright-related claims. As a result, Koenig's Motion to Dismiss will be denied without prejudice and his Motion for Summary Judgment will be granted in part and denied in part.

I.  Background

A. Prestige Homes and John Koenig

In the 1980s, Koenig began working as a salaried employee for Prestige Homes of Fayetteville, Inc., a licensed residential construction company owned by his father. Koenig Aff. ¶¶ 2, 3, D.E. 79–3; Koenig Dep. at 9:5–9, D.E. 79–16. Over the years, Koenig was responsible for a variety of tasks for the company, including "construction, construction oversight, lot selection, and plan selection[,]" but, Koenig claims, he was not responsible for "building plan design[.]" Koenig Dep. at 61:1–7; Koenig Aff. ¶¶ 5, 8; *see also* Defs.' Statement of Undisputed Facts at #6, D.E. 77–1 ("Koenig built homes designed for Prestige Homes.").

Koenig eventually began learning how to design homes. Koenig Aff. ¶ 6. He would send his designs to Todd Tucker, a certified building designer, who would turn the design into a construction plan. Tucker Aff. ¶ 2, D.E. 79–4; Tucker Dep. at 7:11–14; 8:14–16; 43:4–12. Over time, the two worked together on 20–30 plans. Tucker Dep. at 12:7–9. Koenig allowed Prestige Homes to build houses based on his designs. Koenig Aff. ¶ 8; Koenig Dep. at 57:17–20. In 2008, Koenig created a separate company, JAFSIM, LLC, with the intention that it would build homes based on his designs. Koenig Aff. ¶ 9; Koenig Dep. at 17:14–25.

### B. Creation and Use of the JF1502 Plan

Two years later, while working for Prestige Homes, Koenig began working on the plan at the heart of this case. Koenig Dep. at 57:21–24. Koenig used a computer-aided design (CAD) program to create a floorplan by "situat[ing]" and "position[ing]" the different features of a building design. Koenig Aff. ¶¶ 11–13; Tucker Dep. at 37:16–38:18; Defs.' Statement of Undisputed Facts at 3–4 (stating that Koenig made "conceptual *drawings*" of "a two-dimensional floor plan") (emphasis added). This "initial schematic of the plan" included precise dimensions and the placement of specific aspects of a home such as a linen closet. Tucker Dep. at 37:5–19; 41:6–43:3; 72:16–75:16, D.E. 79–18. It also "depicted the rooms, their relation to each other, and the placement of windows, doors, fixtures, and appliances." Tucker Aff. ¶ 4.

After completing approximately 75% of his plan, Koenig sent a PDF of the plan to Tucker. Tucker Aff. ¶ 2, 14; Tucker Dep. at 38:24–39:22; *see also* Defs.' Memo. at 5, D.E. 77. Tucker's job was to "clean up his plan" by making sure it met construction standards and providing "exterior elevations, a foundation plan, cross sections, electrical and lighting plan per John Koenig's direction, and any [other] necessary details and dimensions[.]" Tucker Dep. at 39:13–14; Tucker Aff. at ¶ 6.

Koenig and Tucker met several times to discuss the Plan's development. Tucker Aff. at ¶ 12. Koenig was particular about the design and would have Tucker undo any major changes, even if Tucker thought it led to a better layout. Tucker Dep. at 76:21–77:5. Tucker made the requested additions and changed certain dimensions by a few inches. Tucker Aff. at ¶ 9; Tucked Dep. at 39:6–11; 41:12–21; 72:16–74:25.

Tucker spent between 15 and 20 hours working on the plan. Tucker Dep. at 81:13–17. He named the plan "JF1502," JF for JAFSIM and 1502 for the plan's total square footage. Tucker

Dep. at 43:15–24. Per Koenig's request, Tucker included language on the Plan stating that Koenig was its sole owner. Tucker Dep. at 16:21–25. Tucker included both "JAFSIM" and "Prestige Homes" in the Plan's title block. Tucker Dep. at 23:14–24:10.

According to Koenig and Tucker, they agreed orally that Koenig would own the copyright to the plan after he paid Tucker for his services. Koenig Aff. ¶14; Tucker Aff. ¶13; *see also* Tucker Dep. at 12:23–13:10. Tucker knows he received payment for the plan from a business, but he cannot remember if it he was paid by JAFSIM or Prestige Homes. Tucker Dep. at 10:1–7. As was his practice, Tucker deleted Koenig's original sketches. Tucker Dep. at 8:6–21. Shortly thereafter, Koenig registered the JF1502 Plan with the Copyright Office. Certificate of Registration, D.E. 79–12.

After Koenig registered the Plan, Prestige Homes built nine homes from the design. Defs.' Statement of Undisputed Facts at #31–33; Dowdy Aff. ¶ 44, D.E. 76–2 (quoting Pl.'s Resp. Def.'s First Interrog.). Koenig did not have a written agreement with Prestige Homes about the use of the plan. Defs.' Statement of Undisputed Facts at #5 & #35, D.E. 77–1. But he says that he allowed Prestige Homes to build houses using his designs because it was his father's company. Koenig Aff. ¶¶ 8, 15. He asserts that Prestige Homes never claimed to own the JF1502 Plan. Koenig Aff. ¶ 16.

Neither Koenig nor JAFSIM built any homes based off of the JF1502 Plan. Defs.' Statement of Undisputed Facts at #31–33; Dowdy Aff. ¶ 44, D.E. 76–2 (quoting Pl.'s Resp. Def.'s First Interrog.).

### C. Defendants and Their Use of the Plan

In 2007, Dowdy and McDaniel formed Fortress Homes, LLC, a construction company. Dowdy Aff. ¶¶ 30–33; *see also* McDaniel Aff. ¶¶ 2–6, D.E. 76–5. They served as vice president

4

and president, respectively. *Id.* Dowdy and McDaniel would jointly decide which plans they would use to build homes. Dowdy Aff. ¶¶ 35–36.

Four years later, a Fortress Homes customer who had lost their home to a tornado asked Dowdy to build a house using the JF1502 Plan. McDaniel Dep. at 75:8–25; Dowdy Aff. ¶¶ 37–38. Dowdy negotiated with Koenig to use the Plan, and McDaniel signed a letter agreeing to build only one home from it. Dowdy Dep. 54:8–55:8; 78:4–5; 79:8–12; McDaniel Dep. 39:1–16, D.E. 76–13; McDaniel Letter, D.E. 79–8. McDaniel claims that Fortress Homes built one home from the Plan and then never used it again. McDaniel Dep. at 75:8–14; McDaniel Aff. ¶ 13.

Later that year, Dowdy contacted Charles Bass at Bass Built Homes, Inc. to create a plan for Fortress Homes. Dowdy Dep. at 75:23–76:22; Bass Aff. ¶ 5. Dowdy wanted Bass to make a plan combining his favorite aspects of the JF1502 Plan with aspects of at least one other plan. Dowdy Dep. at 76:8–12; *see also id.* at 49:2–52:25; Dowdy Aff. ¶ 57.

Bass claims that when Dowdy brought him the JF1502 Plan, he saw Koenig's name and copyright information on the Plan. Bass Dep. at 119:15–120:2, D.E. 79–13; Bass Aff. ¶ 6, D.E. 76–17. He then allegedly asked Dowdy if he had "permission to use this plan[,]" to which he claims Dowdy said "yes." Bass Dep. at 119:15–120:2; Bass Aff. ¶ 7. Bass said he took Dowdy at his word because builders often shared plans with each other. Bass Dep. at 121:10–24; Bass Aff. ¶ 8; *see also* Dowdy Dep. at 79:19–21. Believing that Dowdy had permission to use it, Bass did not include Koenig's copyright information on any of the 14 plans he designed for Dowdy from Koenig's JF1502 Plan. Bass Aff. ¶¶ 17–18. Dowdy denies these allegations, stating that Bass "never asked [him] about a copyright." Dowdy Dep. at 77:9–78:11; Dowdy Aff. ¶ 60.

Either way, Bass ultimately created four plans that the Defendants purchased. Dowdy Aff. ¶ 61. Bass claims that all of Dowdy's plans were "either a replica or a derivative" of the JF1502

Plan. Bass Aff. ¶ 19. The parties and their experts disagree on the differences between the JF1502 Plan and these four other plans. *Compare* Monroe Expert Report, D.E. 76–9; Smith Export Report, D.E. 76–10; Ferris Expert Report at 1, D.E. 76–11, *with* Bass Aff. ¶ 9–10; Bass Dep. at 138:13–21; Tucker Expert Report, D.E. 79–19; Richey Export Report, D.E. 79–20. Defendants built at least three homes from these new plans. Dowdy Dep. at 104:16–105:20.

Dowdy then gave some of these plans to other builders. Dowdy Dep. at 111:21–113:24; King Aff. ¶ 16–23, D.E. 76–4. Dowdy's company, All-American Homes, marketed and sold several homes that were allegedly built from these derivative plans. McDaniel Dep. Ex.'s 27, 29–30, D.E. 79–9–79–11

### D. Koenig's Lawsuit

Koenig learned about the derivative plans and filed suit in 2015 against Dowdy; All-American Homes; McDaniel; Fortress Homes; Bass Built Homes; Downwind Investments, LLC; and King Construction and Development Co., Inc. D.E. 1. He brought claims of copyright infringement, improper removal of copyright management information, a violation of the Lanham Act, civil conspiracy, and UDTP. *Id.*

Three months later, Koenig dismissed his claims against Bass Built Homes. D.E. 54. The dismissal followed Bass's execution of an affidavit detailing his involvement in the creation of the four plans. D.E. 76–17. An attorney (it is unclear whether the attorney represented Bass or Koenig) drafted the affidavit as part of Bass's settlement agreement with Koenig. Bass Dep. at 107:11–25. Although Bass made some changes to the affidavit, he still felt like the end product was "a little bit stronger than [what he] really meant . . . ." Bass Dep. at 107:15–22. But he "didn't want to mess up [his deal]" because he "felt it was fair." Bass Dep. at 107:22–25.

A year later, Koenig dismissed his Lanham Act claim (D.E. 78), as well as all of his claims against both Downwind Investments and King Construction (D.E. 81). Around that same time, Defendants filed the dispositive motions that are the subject of this order. D.E. 76, 77.

## II.     Motion to Dismiss

The Defendants initially argue that Koenig lacks standing to maintain a copyright infringement claim because he is not the owner of the JF1502 Plan. Instead, they maintain that either Tucker or Prestige Homes is the Plan's owner. They contend that Tucker is the owner because of the nature and scope of the work he did in creating the JF1502 plan. Alternatively, they claim that Prestige Homes owns the Plan under the work for hire doctrine. Koenig disagrees, arguing that Tucker is at most a joint author of the plan and that he did not create the plan on behalf of Prestige Homes. Ultimately, the court finds that there is a genuine issue of material fact about whether Prestige Homes owned the JF1502 Plan under the work for hire doctrine. Because the issue of ownership is relevant to both subject matter jurisdiction and the merits of Koenig's claim, it is appropriate to deny this motion and allow the jury to address this issue.

Challenges to a court's subject matter jurisdiction can take one of two forms. *Adams* v. *Bain*, 697 F.2d 1214, 1219 (4th Cir. 1982). First, a party may argue that the allegations in the complaint do not establish subject matter jurisdiction. *Id.* In this case, the court should assume that the factual allegations in the complaint are true when considering the motion. *Id.*

Second, a party may challenge the veracity of the facts that form the basis of the court's jurisdiction. In this case, the court may consider matters outside the pleadings, including, "evidence by affidavit, depositions[,] or live testimony . . . " to determine whether the plaintiff has properly established subject matter jurisdiction. *Id.* When approaching a motion to dismiss for lack of subject matter jurisdiction in this posture, the district court should only dismiss the case "if the

7

material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co.* v. *United States*, 945 F.2d 765, 768 (4th Cir. 1991).

If the court is confronted with a circumstance where jurisdictional issues and a claim's merits "are inextricably intertwined" it "should assume jurisdiction and assess the merits of the claim . . . ." *Kerns* v. *United States*, 585 F.3d 187, 195 (4th Cir. 2009). Although in certain circumstances it may be appropriate for the court to resolve this type of dispute, "[i]f satisfaction of an essential element of a claim for relief is at issue . . . the jury is the proper trier of contested facts." *Arbaugh* v. *Y&H Corp.*, 546 U.S. 500, 514 (2006).

Regardless of which approach the court must take in resolving a factual dispute over subject matter jurisdiction, the party invoking the court's jurisdiction, in this case Koenig, "bears the burden of proving the truth of such facts by a preponderance of the evidence." *United States ex rel. Vuyyuru* v. *Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

The Defendants' motion involves a dispute over whether Koenig is the owner of the JF1502 Plan. Ownership of a copyright is an issue that implicates both the court's jurisdiction and the merits of the underlying dispute. *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015) (explaining that to establish a claim of copyright infringement, a plaintiff must show, among other things, "that it owned a valid copyright"). As will be discussed in more detail below, a genuine dispute of material fact exists about whether Koenig is the owner of the copyright. Thus, it is appropriate for the court to deny

the motion to dismiss, assume jurisdiction over Koenig's claims, and allow the jury to determine whether Koenig was, in fact, an owner of the copyright at issue.

## III. Motion for Summary Judgment

The Defendants also claim that they are entitled to summary judgment as to all of Koenig's claims. They claim that there is insufficient evidence to proceed to trial on the copyright infringement, removal of copyright management information, and conspiracy claims. They also argue that Koenig's UDTP claim is preempted by the Copyright Act. Koenig disputes the Defendants' arguments with varying levels of intensity. After reviewing the record, the court has determined that it is appropriate to grant summary judgment on the conspiracy and UDTP claims, but that the presence of genuine issues of material fact necessitates a trial on the copyright infringement and removal of copyright infringement claim.

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that there is no "genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it may be outcome determinative. *News & Observer Publ'g Co.* v. *Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial responsibility of informing this court of the basis for its motion. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). This requires the party to identify those portions of the "pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. *Id.*

If the moving party makes the necessary initial showing, the burden shifts to the non-moving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. To satisfy this burden, the party must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists. *Anderson*, 477 U.S. at 252. Rather, the party must produce sufficient evidence to establish that a jury could reasonably find in his or her favor. *See id.*

In considering the motion for summary judgment, this court construes the evidence and draws all justifiable inferences in favor of the non-moving party. *See Halperin* v. *Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). Summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [because] there is no genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

### B. Copyright Infringement

First, Defendants challenge Koenig's main copyright infringement claim. At trial, Koenig must prove this claim by showing that he "owned a valid copyright" and that "the defendant copied the original elements of that copyright." *Humphreys & Partners Architects, L.P.* v. *Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015) (citations omitted). Here, the court has determined that there is a genuine issue of material fact as to both elements of the claim.

#### 1. Copyright Ownership

The Copyright Act of 1976 explains that the ownership of a copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). Although not explicitly defined in the Act,

courts have explained that "[a]s a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence* v. *Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 201).

The Defendants make two arguments about Koenig's ownership interest in the JF1502 Plan. First, they claim that Tucker was actually the author of the JF1502 Plan because of the scope and nature of the modifications he made to Koenig's initial drawing. Second, they claim that if Tucker was not the author, Prestige Homes holds the copyright to the JF1502 Plan under the work for hire doctrine.

The court will address the work for hire argument first because if the JF1502 Plan was a work for hire, then Prestige Homes "acquire[d] exclusive rights in all" aspects of the Plan, 1 *Nimmer on Copyright* §5.03[C] (2017), and Koenig would have been unable to convey its rights in the Plan to Tucker. After reviewing the record, the court determines that there is a genuine issue of material fact on the work for hire issue that precludes granting summary judgment for the Defendants.

Under the work for hire doctrine, an employer becomes the author of a work when its employee prepared it "within the scope of his or her employment[.]" 17 U.S.C. § 101. Common-law agency principles determine whether a particular work was created within the "scope of employment." *Cmty. for Creative Non-Violence* v. *Reid*, 490 U.S. 730, 740 (1989). This doctrine applies "unless the [employer and employee] have expressly agreed otherwise in a written instrument signed by them[.]" 17 U.S.C. § 201(b).

Courts look at three elements when determining whether an employee prepared a work within the "scope of employment": "(1) the work is of the type for which plaintiff was hired to

perform; (2) the creation of the design occurred 'substantially within the authorized time and space limits' of the job; and (3) it was 'actuated, at least in part, by a purpose to serve' the employer's interests." *McKenna* v. *Lee*, 318 F. Supp. 2d 296, 300 (E.D.N.C. 2002) (quoting *Avtec Sys., Inc.* v. *Peiffer*, 21 F.3d 568, 571 (4th Cir. 1994)), *aff'd*, 53 F. App'x 268 (4th Cir. 2002). Defendants carry the burden of establishing the elements of this test for purposes of summary judgment. *See Avtec Sys.*, 21 F.3d at 572.

Here, it is undisputed that Koenig was an employee of Prestige Homes during the time he created the original drawing that eventually became the JF1502 Plan. *See* Defs.'s Statement at #2, #8, D.E. 77–1; Pl.'s Statement of Undisputed Facts at #8, D.E. 79–1. Thus the court must look to whether he created them during the scope of his employment. The record shows that there are disputed factual issues with respect to the first and third elements of the work for hire test.

As noted above, the court must assess whether Koenig was responsible for designing homes as part of his work with Prestige Homes. There is no written agreement outlining Koenig's responsibilities, Koenig Dep. at 61:1–7, and the record contains conflicting evidence.

For example, Koenig says that "creation of the plan was not part of [his] duties[.]" Koenig Aff. ¶ 8. But during his deposition, Koenig stated that he built homes that he "designed for Prestige Homes." Koenig Dep. 57:10–58:2.

Koenig also testified that he created his own company, JAFSIM, LLC, to build homes that he had designed. Koenig Aff. ¶ 9. But the evidence shows that neither Koenig nor JAFSIM ever built any homes from the JF1502 Plan. Defs.' Statement of Undisputed Facts at #31–33; Dowdy Aff. ¶ 44, D.E. 76–2 (quoting Pl.'s Resp. Def.'s First Interrog.). Instead, Prestige Homes built homes from the Plan. Defs.' Statement of Undisputed Facts at #31–33; Dowdy Aff. ¶ 44, D.E. 76–2 (quoting Pl.'s Resp. Def.'s First Interrog.).

The Plan mentions JAFSIM and Koenig as the owner, but also includes Prestige Homes in the title block. Tucker Dep. at 16:21–25; 23:14–24:10. And either JAFSIM or Prestige Homes paid Tucker for his work he did on the plan at Koenig's behest. Tucker Dep. at 10:1–7.

There is evidence supporting both sides' position on this issue and either side's evidence could be sufficient to result in a decision in its favor. Thus, there is a genuine issue of material fact on this claim which should be submitted to the jury.

There is also conflicting evidence about whether Koenig designed the Plan to serve Prestige Home's interests. Defendants note that Prestige Homes was (1) included in the title block of the plan, (2) potentially paid for the plan, and (3) built nine homes using it (Koenig and his company never built one). Koenig counters by pointing out (1) that his copyright clause and JAFSIM were also included in the title block, (2) that Prestige Homes never claimed to own the plan, and (3) that he allowed Prestige Homes to build from it only because it was his father's company. Again, these sorts of factual disputes are better suited for resolution by the jury than by the court.

After reviewing the parties' submissions, the court finds that there is a genuine issue of material fact as to whether Prestige Homes owned the JF1502 Plan under the work for hire doctrine. Without resolving that issue, the court cannot determine whether Koenig or Tucker was the Plan's author (or whether they were joint authors). Thus Defendants are not entitled to summary judgment on this issue.

### 2. Copying of Original Elements

If Koenig is the owner of the copyright in JF1502, he must still prove that the Defendants copied the original elements of his copyright through either direct or indirect evidence. *Humphreys & Partners Architects, L.P.*, 790 F.3d at 537. Here, the Defendants argue that "there is nothing unique or copyrightable" about the JF1502 plan. Defs.' Memo. at 11. Although Koenig disagrees,

he conceded that there are genuine issues of material fact on this point. Tr. 44:13–15. Thus, his motion for summary judgment will be denied as to the copyright infringement claim.

### C. Removal of Copyright Management Information

Koenig's second claim alleges that "one or more Defendants" violated the provisions of 17 U.S.C. § 1202 by creating copies of JF1502 without copyright management information ("CMI") and then distributing the copies of the derivative plans to others. Compl. ¶ 44. Defendants assert, in a single paragraph, that they are entitled to summary judgment because there is no evidence that any of the remaining defendants removed CMI from the Plan. According to the Defendants, Bass removed the CMI and, thus, he is the only party who could have been held liable. Koenig responds by arguing that the Defendants should be held vicariously liable for Bass's removal of the CMI because he did so at their request.

As is relevant here, § 1202(b) prohibits a party from "intentionally remov[ing] or alter[ing] any copyright management information" or "distribut[ing] . . . works [or] copies of works . . . knowing that copyright management information has been removed or altered . . . ." 17 U.S.C. § 1202(b)(1) & (3). To be held liable, the party must undertake the actions "without the authority of the copyright owner or the law" and "knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under" Title 17 of the United States Code. *Id.* § 1202(b). Copyright management information is defined to include among other things the work's title, the name of the work's author, the name of the copyright owner, and the information set forth on a notice of copyright. *Id.* § 1202(c).

As an initial matter, the court notes that Defendants have not argued that they are entitled to summary judgment on the issue of whether they "distributed copies of the altered design with

the belief that such removal of the copyright information would induce, enable, or facilitate Defendants use or reproduction of the altered designs." Compl. ¶ 44. Instead, their argument focuses solely on whether they can be held liable for the removal of the cCMI. Thus, the court will find that the Defendants are not entitled to summary judgment on Koenig's claim under 17 U.S.C. § 1202(b)(3).

As for the claim based on the removal or alteration of CMI, it is undisputed that Bass produced plans for Dowdy without the same CMI contained on the JF1502 Plan and that he did not have permission from Koenig to do so. But what is unclear is whether the Defendants can be held vicariously liable for Bass's actions because they requested that he produce the derivative plans that lacked the necessary CMI. Koenig points to several cases from courts outside of this circuit for the prospect that a party can be held vicariously liable for removal of CMI. *See Gordon* v. *Nextel Commc'ns & Mullen Adver., Inc.*, 345 F.3d 922, 925–926 (6th Cir. 2003); *Rosenthal* v. *MPC Computs., LLC*, 493 F. Supp. 2d 182, 190 (D. Mass. 2007); *Atlanta Photography, LLC* v. *Ian Marshall Realty, Inc.*, No. 1:13-CV-2330-AT, 2014 WL 11955391, at *4 (N.D. Ga. Mar. 7, 2014); *Stockart.com, LLC* v. *Engle*, No. 10-CV-00588-MSK-MEH, 2011 WL 10894610 at *9 (D. Colo. Feb. 18, 2011). The Defendants do not challenge this assertion, so the court will find that they have conceded this issue for the purposes of this motion.

To hold a party vicariously liable in the context of copyright law, the plaintiff must show that "(1) a defendant has the right and ability to supervise the infringing conduct and (2) the defendant has an obvious and direct financial interest in the infringement." *Gordon* v. *Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 925 (6th Cir. 2003). *Accord Nelson–Salabes, Inc.* v. *Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002). Again, Defendants have failed to address this argument, so the court will find that they have failed to show that they are entitled

15

to summary judgment on Koenig's claim that they are vicariously liable for a violation of 17 U.S.C. § 1202(b)(1).

**D. Conspiracy**

Next, Defendants move to dismiss Koenig's civil conspiracy claim on the basis that there is insufficient evidence to allow the claim to go to trial. The record demonstrates that Koenig cannot establish that there was an agreement between the parties to engage in wrongful conduct. Thus, the Defendants are entitled to summary judgment on this claim.

Koenig's conspiracy claim is based upon the theory that Dowdy, McDaniel, Fortress Homes, and All-American Homes conspired to "deprive [Koenig] of his rights in JF1502, in violation of federal copyright law . . . ." Compl. ¶ 52.[1] To prevail on this claim, Koenig must show "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Strickland* v. *Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 71 (2008) (quoting *Privette* v. *Univ. of N.C.*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989)).[2]

Although they do not specify which element in particular is lacking, Defendants claim that "[t]here is no evidence of any civil conspiracy between the Defendants in this action." Mem. in Supp. Mot. Summ. J. at 12, D.E. 77. Koenig responds that there is sufficient circumstantial evidence to establish that there was an agreement among Dowdy, McDaniel, Fortress Homes, and

---

[1] Koenig's civil conspiracy claim originally also involved Bass Built Homes, Downwind Investments, and King Construction and alleged that the conspiracy involved a violation of the Lanham Act (D.E. 1), but these defendants and claims have been dismissed (D.E. 54, 78, 81).

[2] It is worth noting that Defendants did not argue that the conspiracy claim is preempted by federal law. Had they raised this argument, they would have had substantial support on their side. *Tire Eng'g & Distrib., LLC* v. *Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 311–12 (4th Cir. 2012) (finding that a state law claim that defendants conspired to violate the Copyright Act was preempted).

All-American Homes to violate his rights in the JF1502 design. Resp. in Opp'n Mot. Summ. J. at 20, D.E. 79. Koenig is correct that a party may rely on circumstantial evidence to establish a conspiracy, but "the evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission of the issue to a jury." *Dickens* v. *Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981).

As best as can be discerned from the vague arguments in the various briefs, it appears that the conspiracy claim involves two separate schemes. First, McDaniel, Dowdy, and Fortress Homes allegedly conspired to obtain the JF1502 design from Koenig under the pretense that they would only build one home with the plan, but actually intended to have Bass create a derivative plan and then build additional homes using the derivative plan. Second, Dowdy and All-American Homes agreed to market these homes and distribute the derivative plans to other builders.

Koenig's conspiracy theory cannot withstand summary judgment because it conflicts with the intracorporate conspiracy doctrine. Under this doctrine, a corporation cannot engage in a conspiracy with its officer or agents. *Greenville Publ'g Co.* v. *Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). The doctrine is based on the understanding that "[a] corporation's officers, employees, or agents are mere extensions of the corporation, and an agreement between such personnel (or between such personnel and the corporation they serve) is therefore not a conspiracy." *Iglesias* v. *Wolford*, 539 F. Supp. 2d 831, 836 (E.D.N.C. 2008) (citing cases).

Here, Dowdy and McDaniel are both officers of Fortress Homes and Dowdy is an officer of All-American Homes. Dowdy Aff. ¶¶ 3, 33; McDaniel Aff. ¶¶ 4, 5. Thus, an agreement between these individuals to utilize their business entities for a wrongful purpose would be insufficient to establish a conspiracy. *See Painter's Mill Grille, LLC* v. *Brown*, 716 F.3d 342, 353 (4th Cir. 2013) (holding that the intracorporate conspiracy doctrine bars a conspiracy claim when "the three

17

conspirators were also agents of the same two companies"). There are exceptions to this doctrine, but there is no evidence that would indicate that they apply here (and no party has made this argument).[3] Thus, the Defendants' motion for summary judgment as to the conspiracy claim will be granted.

### E. Unfair and Deceptive Trade Practices

Finally, Defendants move for summary judgment on Koenig's UDTP claim, which they claim is preempted by the Copyright Act. Koenig spends most of his response justifying the merits of his UDTP claim and only devotes one sentence and one citation to the preemption issue. But Koenig's response establishes that the UDTP claim is based on allegations that the Defendants inappropriately created derivative works from the JF1502 Plan. Because the right of an author to create derivative works is protected by the Copyright Act, the UDTP claim is preempted by federal law and must be dismissed.

The Copyright Act exclusively governs "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [of the Act.]" 17 U.S.C. §301(a). Thus, the Act preempts a state law claim that (1) "falls within the subject matter of copyright" and (2) "protects rights that are equivalent to any of the exclusive rights of a federal copyright." *Tire Eng'g & Distrib., LLC* v. *Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 309 (4th Cir. 2012) (citation and quotations omitted).

The JF1502 Plan, as an architectural work, falls within the scope of the Copyright Act. *See* 17 U.S.C. § 201(a). Thus, the viability of Koenig's UDTP claim depends on whether it seeks to vindicate a right described in § 106 of the Copyright Act. These rights include the ability to

---

[3] Alternatively, the court would find that Koenig failed to present evidence of an agreement between the parties to engage in conspiracy that rose above the level of speculation and conjecture. While Dowdy is a central actor to each aspect of the alleged conspiracy, there is no indication that McDaniel ever agreed to engage in wrongful conduct.

"reproduce the copyrighted work in copies" and "to prepare derivative works based on the copyrighted work[.]" 17 U.S.C. § 106(1) & (2).

Generally, a court assessing whether a state law claim protects the same rights as the Copyright Act will look "to the elements of the state cause of action." *Roscisczewski* v. *Arete Assoc., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993). If the alleged act of copyright infringement would also violate the right protected by the state law claim, the claim is preempted. *Id.* But if the state law claim includes an "extra element … instead of or in addition to the acts of reproduction, performance, distribution or display" it is not preempted. *Id.* at 229–30 (citations and quotations omitted). The extra element must be one that makes the state law claim "qualitatively different from a copyright infringement claim." *Id.* (citations and quotations omitted).

But due to the broad scope of North Carolina's UDTP claim, it could easily encompass rights that are otherwise protected by the Copyright Act. Thus, courts have "reverted to examining the allegations underlying the state law cause of action." *Rutledge* v. *High Point Reg'l Health Sys.*, 558 F. Supp. 2d 611 (M.D.N.C. 2008).

Here, Koenig's briefing spells out the basis for his UDTP claim. He maintains that the Defendants "did not have permission to use the Plan to create other drawings from it…." Resp. in Opp'n to Mot. for Summ. J. at 22, D.E. 79. And Koenig faults Dowdy for making statements that "implied to Bass that the permission granted was to create derivative drawings…." *Id.* As noted above, among the rights protected by the Copyright Act is the right "to prepare derivative works based on the copyrighted work[.]" 17 U.S.C. § 106(2). Thus, Koenig's UDTP claim is not qualitatively different from his copyright claim and it is preempted by the Act.

## IV. Conclusion

In sum, the court finds that the Defendants failed to show that there are no genuine issues of material fact for Koenig's claims of both copyright infringement and improper removal of the copyright management information under a theory of vicarious liability. Thus the court denies Defendants' Motion for Summary Judgment for these two claims. In light of this finding, the Motion to Dismiss based on lack of standing is also denied without prejudice.

But the court does find that the Defendants are entitled to summary judgment on Koenig's UDTP and civil conspiracy claims. As a result, the court grants Defendants' Motion for Summary Judgment for these two claims and they are dismissed with prejudice.

Dated: September 28, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge